UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

FRANK BRUNCKHORST CO., LLC,

        Plaintiff,

-against-

HOG'S BREATH INTERNATIONAL, INC. and
HOG'S BREATH SALOON OF KEY WEST, INC.,

        Defendants.

------------------------------------------------------------- X

02 CV 2256 (ARR)

NOT FOR PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

    The defendants, Hog's Breath International, Inc. and Hog's Breath Saloon of Key West, Inc. (collectively "Hog's Breath"), have moved to transfer this action to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

### Proper Venue

    In evaluating a motion to transfer, "the court considers first whether venue is proper in the proposed transferee district." Kroll v. Lieberman, 244 F.Supp.2d 100, 102 (E.D.N.Y. 2003). Venue is proper in the proposed transferee district if the action "might have been brought" in that district. Id.; 28 U.S.C. § 1404(a). The defendants have requested that the court transfer this action to the Southern District of Florida. This action could have been brought in the Southern District of Florida, because that district, like the Eastern District of New York, would have jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 (a) and

(b), and 1121. (Cplt. at ¶¶ 3-4.) Notably, in opposing the defendants' motion to transfer, the plaintiff does not contest that venue would be proper in the Southern District of Florida.

Transfer

Since venue would be proper in the Southern District of Florida, the court must "consider[] whether transfer [to that district] will serve the convenience of the witnesses and parties and is in the interests of justice." Kroll, 244 F.Supp.2d at 102. The court relies on several factors to guide its consideration:

> (1) convenience of witnesses; (2) convenience of parties; (3) locus of operative facts; (4) availability of process to compel the attendance of unwilling witnesses; (5) location of relevant documents and other sources of proof; (6) relative means of the parties; (7) relative familiarity of the forum with the governing law; (8) weight accorded to the plaintiff's choice of forum and (9) the interests of justice.

Id.; accord Distefano v. Carozzi N. Am., Inc., 2002 U.S. Dist. Lexis 23042, *3-*4 (E.D.N.Y. Nov. 27, 2002). The court addresses each factor below.

*Convenience of the witnesses*

"Convenience of the witnesses 'is the most powerful factor governing the decision to transfer a case.'" Distefano, 2000 U.S. Dist. Lexis 23042, *4 (quoting In re Repetitive Stress Injury Litig., 850 F.Supp. 188, 194 (E.D.N.Y. 1994)); accord Wine Mkts. Int'l, Inc. v. Bass, 939 F.Supp. 178, 183-84 (E.D.N.Y. 1996). Since the law expresses a clear preference for live testimony at trial, the court must consider the burden that witnesses and parties face in securing such testimony. Id. at *5.

All of the defendants' party witnesses reside in Florida. (Carr Decl. at ¶¶ 5, 8.) In addition, all the defendants' non-party witnesses identified to date reside in Florida. (Carr Reply Decl. at ¶ 2.) Certain of the defendants' non-party witnesses will likely testify to the

2

creation, design and use of the Hog's Breath oval design logo since the mid-1980s. Id. One of the defendants' non-party witnesses, Michael Martella, the President of Boar's Head, is involved in the operation and management of Frank Brunckhorst Co. (Cannistra Dep. at 22, 31, 36-37, Attached as Ex. F to Atlas Aff.) Martella will likely testify regarding the Boar's Head trademark and logo. (Def. Reply Mem. at 3-4.)

Moreover, many of the plaintiff's own party witnesses reside in Florida and work primarily in the plaintiff's office at 400 Sarasota Quay in Sarasota, Florida. As the plaintiff's own Rule 30(b)(6) expert testified, these witnesses include many of the most important company employees: two of the three owners of the company, three of the four directors, one of the two national sales managers, and the individual most knowledgeable about the company's trademark and logo issues.

- Frank Brunckhorst and Robert Martin, owners, exercise primary decision-making authority for the company regarding all business matters, including trademark and logo issues. (Cannistra Dep. at 16-19.)

- Michael Diaferio, Director of Sales, manages all sales operations nationwide, except in the northeast region. (Cannistra Dep. at 12, 49-53.)

- Pamela Maddox, Director of Human Resources, bears "ultimate responsibility for HR matters." (Cannistra Dep. at 54-55.)

- Ruth Ann Lamore, Director of Marketing, oversees advertising, promotions, and other marketing aspects of the business nationwide. (Cannistra Dep. at 56.)

- Linda McCormick, Marketing Administrative Assistant, maintains custody of trademark documents and filings in Florida and reports to Lamore. (Cannistra Dep. at 56-57.)

- Anna Rita Nora, Innovative Manager, is "the Brunckhorst employee who is most knowledgeable about the logos and trademarks" and "provides outside counsel with information regarding trademarks and trademark filings." (Cannistra Dep. at 57-58, 69, 75.)

Several of the plaintiff's party witnesses reside in New York, including John Cannistra, Director of Sales; Susan Ballenger, Marketing Manager; Michael McMahon, Northeast Marketing Manager; and Robert Reill, Haberdashery Manager. (Pl. Mem. at 15-16.) This fact alone does not suggest, however, that transfer will merely shift the inconvenience from one group of witnesses to another group. On balance, most of the important witnesses - on both sides of this litigation - with information regarding the trademarks at issue reside in Florida. Therefore, the convenience of the witnesses favors transfer.

*Convenience of the parties*

Since so many of the important witnesses in this litigation are employees of the parties, the convenience of the parties is closely related to the convenience of the witnesses. The analysis of the former factor, therefore, applies with equal force to the latter. Furthermore, the fact that both parties reside and conduct corporate activities, at least in part, in Florida is also relevant in evaluating the convenience of the parties.

The defendants' employees do not regularly - if ever - travel to New York for business reasons. The defendants are two Florida saloons. All three of the defendants' employees who are primarily responsible for corporate operations live and work in Florida. (Carr Decl. at ¶ 5.) The defendants do not own any real estate outside Florida; the defendants do not maintain any bank accounts outside Florida; and the defendants maintain all of their corporate documents, including documents relevant to this litigation, in Florida. Id. at ¶¶ 6-7. Due to the two saloon locations, the defendants' employees are divided between Destin, Florida, in the "panhandle" and Key West, Florida, in South Florida. Those employees who work in

Destin commonly travel to South Florida for business purposes, but none of the defendants' employees ever travel to Brooklyn for business purposes. (Carr Reply Decl. at ¶ 2.)

In contrast, the plaintiff's employees regularly travel to Florida for business reasons. The plaintiff is a company that markets and sells food products, primarily deli meats, through a nationwide network of distributors. Plaintiff maintains offices in Brooklyn, New York, and Sarasota, Florida, among other locations. (Cannistra Dep. at 13, 29.) As noted previously, most of the plaintiff's employees with authority over and knowledge of the trademarks at issue in this litigation, e.g., the two owners of the company with primary decision-making authority over trademark issues, live in Florida and work in the plaintiff's Florida offices. Moreover, the plaintiff holds corporate meetings in both Florida and New York. (Cannistra Dep. at 27-28.) When corporate meetings are held in Florida, those employees who live and work in New York travel to Florida to attend those meetings. Id.

This litigation will inevitably involve travel between Florida and New York by some persons. Nevertheless, the convenience of the parties favors transfer, because "there are more parties who would have to travel from [Florida] to a New York forum than visa versa." Wine Mkts. Int'l, Inc., 939 F.Supp. at 182. Furthermore, the fact that the plaintiff maintains an office in Florida and that the plaintiff's New York employees travel to Florida to attend corporate meetings minimizes the inconvenience to those persons who will have to travel from New York to Florida for this litigation.

*Locus of operative facts*

This is a trademark dispute. The plaintiff alleges that it owns the Boar's Head trademark and uses that logo to sell its deli meats and other products. (Cplt. at ¶¶ 7-12.) The

5

plaintiff further alleges that the defendants have used a "strikingly similar" Hog's Breath logo to sell "hot sauces, spices, seasonings, drink mixes and certain/promotional/novelty items including shirts, caps, and mugs." Id. at ¶¶ 20-21.

For venue purposes, the locus of operative facts in a trademark dispute can be any district in which the defendant sells the allegedly infringing products. Kiss My Face Corp. v. Bunting, 2003 U.S. Dist. Lexis 17096, *9 (S.D.N.Y. Sept. 30, 2003) ("[I]f the allegedly infringing products are sold within the Southern District of New York, even if sold elsewhere, there exists a sufficient connection with this District."). Recently, the defendants began selling their Hog's Breath products through their on-line store at www.hogsbreath.com. (Cplt. at ¶ 22.) Through the website, defendants sell their products in New York and elsewhere. Id. Since the defendants sell their products here, New York constitutes a locus of operative facts in this action. Therefore, this factor does not weigh in favor of transfer.

*Availability of process to compel the attendance of unwilling witnesses*

The ability to compel the attendance of witnesses is an important factor in considering whether to transfer. Computer Express Int'l, Ltd. v. MicronPC, LLC, 2001 U.S. Dist. Lexis 22584, *9 (E.D.N.Y. Dec. 21, 2001). This factor focuses primarily on third-party witnesses, because employees of the parties will generally be under corporate control and available voluntarily. USA Interactive v. Savannah Air Ctr., LLC, 2002 U.S. Dist. Lexis 14476, *5 (S.D.N.Y. Aug. 7, 2002). As discussed above, the only non-party witnesses identified to date reside in Florida. Therefore, the court in the Eastern District of New York would be unable to compel their attendance at trial. Of course, depending on where they reside in Florida, the court in the Southern District of Florida may prove similarly powerless. See Fed. R. Civ.

Pro. 45(b) (imposing 100 mile limit on service of subpoenas). Nevertheless, the court in the Southern District of Florida stands a far better chance of reaching unwilling non-party witnesses with its subpoena power. Therefore, this factor weighs in favor of transfer.

*Location of relevant documents and other sources of proof*

The location of relevant documents is entitled to "some weight" when determining whether to transfer an action. In re Repetitive Stress Injury Litig., 850 F.Supp. 188, 194 (E.D.N.Y. 1994). The defendant maintains all of its documents in Florida. (Carr Decl. at ¶ 7.) The plaintiff also maintains a set of trademark filings and other relevant documents in Florida, including "anything that would have to do with the logos, the Boar's Head logos." (Cannistra Dep. at 55.) Therefore, this factor weighs in favor of transfer. However, this factor does not deserve great weight, since there is no indication that the documents at issue are particularly voluminous, see Computer Express Int'l, 2001 U.S. Dist. Lexis 22584, at *29-30, and because modern technology greatly minimizes the inconvenience associated with copying and transporting documents. See Distefano, 2000 U.S. Dist. Lexis 23042, at *11-12.

*Relative means of the parties*

When there is a disparity in the relative means of the parties, the court considers this factor in determining whether to transfer. See Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 989 (E.D.N.Y. 1991). Even as between two corporations, the court may consider whether one party has "far greater economic resources" and whether "litigation in a distant forum could pose a significant financial burden" on the other party. 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128, 135 (S.D.N.Y. 1994).

The defendants are two Florida saloons which, in addition to serving food and drink, also sell products locally at the saloons and nationally through a website. (Carr Decl. at ¶¶ 2, 4.) The plaintiff is an almost 100 year-old purveyor of deli meats and other products through a national network of distributors. The plaintiff operates facilities in six states, including Florida and New York, and employs over 500 persons. (Cannistra Decl. at ¶ 4.) While specific financial information is not available to determine the extent of the disparity, the plaintiff does not dispute that it enjoys greater financial means than the defendants. Therefore, this factor also weighs in favor of transfer. In the absence of more specific financial information, however, this factor, like the location of documents, does not weigh heavily in the court's decision to transfer.

*Relative familiarity of the forum with the governing law*

"Trademark infringement and unfair competition fall within the ambit of federal patent law. 'Patent law is federal law, [and therefore] any district court may handle a patent case with equal skill.'" Kiss My Face, 2003 U.S. Dist. LEXIS 17096, at *12-13 (quoting Recoton Corp. v. Allsop, Inc., 999 F.Supp. 574, 578 (S.D.N.Y. 1998)). Since both the Southern District of Florida and the Eastern District of New York are equally competent to handle this action, this factor does not weigh in favor of transfer.

*Weight accorded to the plaintiff's choice of forum*

"[D]eference is given to the plaintiff's choice of forum and transfer should be ordered only if the balance of conveniences weighs strongly in favor of the change of forum." Kroll, 244 F.Supp.2d at 102-3. "However, where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the

plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance." Wine Markets Int'l, 939 F.Supp. at 183.

As noted previously (ante at 5-6), in considering the locus of operative facts, the sale of an allegedly infringing product in a judicial district establishes a sufficient connection with that district. But, a sufficient connection is not necessarily a significant connection. See Pergo, Inc. v. Alloc, Inc., 262 F.Supp.2d 122, 129-130 (S.D.N.Y. 2003) (transferring a trademark dispute from the Southern District of New York, because, despite the sales of allegedly infringing products in that district, more significant connections existed with the transferee district). And, here, there is no significant or material connection to Brooklyn. The defendants sell their Hog's Breath products through the Hog's Breath saloons in Destin, Florida, and Key West, Florida. (Def. Mem. at ¶ 7.) The defendants also use the Hog's Breath logo in their "local marketing and promotional activities" in Florida. Id. Even defendants' website, the sole commercial link between the defendants and the Eastern District of New York, was created and is maintained in Florida. See www.hogsbreath.com <last visited October 23, 2003>. The fact that the defendants have made their products available in New York through their website and sold some products in New York does not require this district to retain this action.

Even if Brooklyn is the plaintiff's principal place of business, a decision that the court need not reach, there remains a much more significant connection between this case and the Southern District of Florida, because most of the important witnesses reside in Florida, both parties reside at least in part in Florida, and the allegedly infringing activity took place primarily in Florida. Therefore, the plaintiff's choice of the Eastern District of New York as

the forum deserves less consideration. In the end, the factors discussed above weigh strongly in favor of transfer and are sufficient to overcome the deference owed to the plaintiff's choice of forum.

*Interests of justice*

Having considered all of the above factors, including the plaintiff's choice of forum, the court finds that transfer to the Southern District of Florida is appropriate and in the interests of justice. The plaintiff argues that the defendants have engaged in "inaction and delay" and urges the court not to "reward" the defendants with transfer. (Pl. Mem. at 6-8.) The court is not convinced, on this record, that the defendants have engaged in any misconduct or improper dilatory tactics. Moreover, even if the court found misconduct or delay, it is not clear that denying defendants' motion to transfer would be the appropriate response.

## CONCLUSION

For the foregoing reasons, the defendants' motion to transfer this action to the Southern District of Florida is granted. The Clerk of the Court for the Eastern District of New York shall transfer all records and papers in this action to the Clerk of the Court in the Southern District of Florida.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: October 30, 2003
    Brooklyn, New York

SERVICE LIST:

Attorneys for the Plaintiff

Charles R. Hoffmann
R. Glenn Schroeder
Hoffman & Baron, LLP
6900 Jericho Turnpike
Syosset, NY 11791

Attorneys for the Defendant

David Y. Atlas
Edward H. Rosenthal
Wendy Stryker
Frankfurt, Kurnit, Klein & Selz, P.C.
488 Madison Avenue
New York, NY 10022

Attorney for the Intervenor

Suzanne M. Billig
McElfish & Associates, LLC
1790 Broadway, Suite 702
New York, NY 10019

cc:   Magistrate Judge Azrack